# JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| STANLEY HARRIS and TED PAPPAS, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>FIRST REGIONAL BANCORP, FIRST REGIONAL BANCORP PLAN COMMITTEE, FRED M. EDWARDS, H. ANTHONY GARTSHORE, GARY M. HORGAN, THOMAS MCCULLOUGH, RICHARD E. SCHREIBER, LAWRENCE J. SHERMAN, JACK A. SWEENEY, MARILYN J. SWEENEY, KIM MEYER, ELIZABETH THOMPSON,<br><br>   Defendants. | Case No.: CV 10-07164-CJC(MLGx)<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF THE PLAN OF ALLOCATION, ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES, AND CASE CONTRIBUTION AWARDS |

## I.    INTRODUCTION AND BACKGROUND

On September 24, 2010, Plaintiffs Stanley Harris and Ted Pappas ("Plaintiffs") brought this action on behalf of the First Regional Bank 401(k) Plan (the "401(k) Plan"), the First Regional Bancorp Employee Stock Ownership Plan (the "ESOP" or together with the 401(k) Plan, the "Plans"), themselves, and others similarly situated against Defendants First Regional Bancorp ("First Regional"), First Regional Bancorp Plan

-1-

Committee, and ten individuals (collectively, "Defendants") pursuant to sections 409 and 502 of the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against Defendants, who are purported to be fiduciaries of the Plans. Plaintiffs filed the operative Amended Class Action Complaint ("FAC") on April 11, 2011 (Dkt. No. 29), alleging that Defendants, as fiduciaries of the Plans as defined under ERISA, breached their duties under ERISA, particularly with regard to the Plans' holdings of First Regional Stock, (FAC ¶ 4). Plaintiffs allege three causes of action against Defendants in the FAC under sections 404 and 405 of ERISA: (1) failure to prudently and loyally manage the Plans in breach of fiduciary duties, (2) breach of the duty to avoid conflicts of interest, and (3) failure to adequately monitor other fiduciaries and provide them with accurate information. The parties agreed to settle the case, and the Court preliminarily approved Plaintiffs' proposed settlement agreement on January 6, 2012. (Dkt. No. 61 ["Preliminary Approval Order"].) Final settlement of the case was delayed however due to First Regional filing for bankruptcy shortly after the Court's preliminary approval. The bankruptcy issue having been resolved, Plaintiffs now seek final approval of the class action settlement, attorneys' fees and costs, and an enhancement for themselves as the representative plaintiffs. (Dkt. Nos. 86, 87.) Defendants do not oppose the motion.

There are over 450 class members in the proposed class. (Dkt. No. 86-1, Pls.' Mem. in Supp. of Final Approval ["Pls.' Mem."] at 31.) Pursuant to the procedure preliminarily approved by the Court, on October 17, 2013 Plaintiffs attempted to notify all class members of the settlement and of the opportunity to submit claims, opt out, or object to the settlement. (*Id.* at 26.) On December 9, 2013, Plaintiffs notified the Court that after multiple comprehensive searches for current addresses, and two mailing attempts, Plaintiff's counsel was able to send notices to all but 5 of the 459 identified class members. (Dkt. No. 89-1 ["Peters-Stasiewicz Supplemental Decl."] ¶ 5c.) Additionally, Plaintiffs have set up a dedicated settlement website and a toll-free number

to allow class members to contact class counsel with questions.  (Dkt. No. 88 ["Gyandoh Decl."] ¶¶ 71–73.)  To date, there have been no objections to the settlement.

Under the settlement, Defendants will pay the settlement class a cash payment of $950,000.  (*See* Gyandoh Decl. Exh.1 ["Settlement Agreement"] 1.10.)  Pursuant to the agreement, Plaintiffs seek deductions of the following amounts from that total: $1,500 to each Named Plaintiff for their services in prosecuting this action and representing the class, $237,500 to class counsel for attorneys' fees (which is 25% of the total settlement amount), and future deductions of costs for notice and administration.  The funds will be dispersed to the class members based upon a calculation of their net loss in each of the underlying retirement plans, resulting in an average recovery of about $1,400 per class member.  (Gyandoh Decl. ¶¶ 46–51; Settlement Agreement Exh. 3. ["Plan of Allocation"].)  In return for these payments, class members will grant Defendants a complete release of all claims arising from this action. (Gyandoh Decl. ¶ 48; Settlement Agreement 1.33, 3.1, 3.3.)

## II.   DISCUSSION

When the parties reach a settlement agreement prior to class certification, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The Court will first assess the propriety of class certification, followed by the fairness of the settlement agreement, the adequacy of the notice, attorneys' fees and costs, and plaintiffs' service awards.

### a.  Certification of the Class

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the four requirements under Rule 23(a)

concerning numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described under the subsections of Rule 23(b).  In this case, Plaintiffs seeks certification pursuant to Rule 23(b)(1), which allows certification if "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(A), (B).  The Court previously concluded that Plaintiffs had presented sufficient evidence to show that the proposed class satisfied the numerosity,[1] commonality, typicality, and adequacy requirements under Rule 23(a) and met the requirements for certification under Rule 23(b)(1)(A) and (B) given the risk of inconsistent findings and the risk that adjudication in favor of individual class members would also be dispositive of the interests of other non-party class members.  (*See* Preliminary Approval Order at 3–6.)  Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification. Accordingly, the Court grants certification of the class for purposes of settlement.

### b.  The Settlement

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular*

---

[1]  When the Court granted preliminary approval of the class settlement, in assessing the numerosity of the class, it noted that "[t]he total number of class members is approximately 622." (Preliminary Approval Order at 3.)  The size of the class is now believed to be approximately 450 individuals.  (Pls.' Mot. at 31.)  This decrease in the size of the class does not affect the Court's conclusion that the proposed class satisfies the numerosity requirement of Rule 23(a).

*Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)).  The Ninth Circuit recognizes "an overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Notwithstanding the policy favoring settlement, Federal Rule of Civil Procedure 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable" in order to protect the interests of absent class members. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (emphasis omitted)).  To determine whether this standard is met, a district court must consider a number of factors, including " 'the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.' "  *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  Having fully considered the *Staton* factors, the Court finds this settlement fundamentally fair and reasonable to the parties involved.

The settlement agreement appears to be fair in its terms and was thoroughly negotiated.  The settlement was the product of arms-length negotiations reached after formal mediation with the Honorable Edward A. Infante (Ret.).  (Gyandoh Decl. ¶ 14.) There is no indication that the settlement was a result of fraud or overreaching.  The relative strength of Plaintiff's case and the risk, expense, and complexity of litigation, as well as the risk of maintaining class status and the likely duration of further litigation, all weigh heavily in favor of settlement.  While class counsel believe the litigation has merit, they recognize that "the type of ERISA breach of fiduciary duty claims alleged by Plaintiffs is notoriously difficult for plaintiffs to prosecute," and that "[t]his case is no

exception." (Pls.' Mem. at 17.)  In addition to the complexity of the issues involved, continued litigation of the suit poses significant risks to Plaintiffs' ability to recover. Notably, First Regional has filed for a bankruptcy, which placed the preliminary settlement in jeopardy and delayed proceeding in this Court. (*See* Pls.' Mem. at 18–19.) Additionally, any recovery will be funded not through insurance, but by the banks' assets and from individual directors, who can each declare bankruptcies of their own. (*See* Gyandoh Decl. ¶¶ 20–23.)

The amount offered in settlement also supports approval.  The settlement provides for a cash payment of $950,000, less costs, attorney's fees, and an enhancement for the named plaintiffs. (*Id.*¶¶ 5–6.)  Following the formula outlined in the Plan of Allocation, class members will receive an average payout of $1,400 each. (Pls.' Mem. at 22.)  While class counsel represents that class members could receive aggregate damages exceeding $50 million in a best-case scenario, such a recovery is highly contested, and relies on a "breach date" that would be burdensome to prove. (Gyandoh Decl. ¶ 10.)  On the other hand, using a later, more readily provable "breach date" would significantly reduce the recovery available to the class to an amount below the settlement sum. (*Id.*; Pls.' Mem. at 21.)  Given the uncertainty of recovery due to First Regional's bankruptcy, and the uncertainty of the "breach date" from which Plaintiffs' amount of recovery could be calculated, the settlement amount is within the range of reasonableness.

While this litigation has been ongoing for several years, formal discovery has not taken place.  However, Plaintiffs' counsel has engaged in informal discovery, including reviewing First Regional's public filings, reviewing government-issued orders to Defendants, and over a thousand pages of Plan-related documents provided to Plaintiffs by defense counsel in response to Plaintiffs' ERISA § 104(b) letter. (Gyandoh Decl. ¶¶ 8–11.)  The parties also engaged in a day-long mediation session before a mediator experienced in imprudent investment ERISA actions.  Through such actions, the parties

have been able to gain a sufficient knowledge of the strength and weaknesses of their

respective cases to enter into an informed settlement.

Experienced class counsel believe that the results achieved by the settlement are fair and reasonable.  (Pls.' Mem. at 24–25; Gyandoh Decl. ¶ 50.)  Further, the reaction of the class members also suggests that the settlement is fair.  As of December 9, 2013, no exclusion requests or objections have been received.  (*See* Dkt. No. 89, Supplemental Mem. in Supp. of Final Approval ["Supplemental Mem."] at 2–3.)   *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement.").

Accordingly, after considering the terms of the settlement, the Court finds that it is fair, reasonable, and accurate.  Further litigation would involve significant risk and expense.  The amount offered in settlement appears rational, and the parties settled the case after sufficient discovery to evaluate the merit of the class members' claims.

### c.  Sufficient Notice

The notice provided to the settlement class was also adequate under Rule 23.  Rule 23(e)(1) requires that when a proposed settlement has been reached, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, Class Notice was sent by first-class mail to all identified class members.  Of those mailings, there are only five class members whose Notices were returned as undeliverable and for whom class counsel has been unable to obtain a valid alternative address.  (*See* Peters-Stasiewicz Supplemental Decl. ¶ 5c.)  In addition to mailing Class Notices to individual class members, a website and toll-free telephone number were also set up to provide additional exposure and assist with answering questions, submitting claims, and receiving additional information.  (Gyandoh Decl. Exh. 5 [Peters-Stasiewicz Decl.].)  Thus, the notice to the class was sufficient in this case.

### d. Attorneys' Fees

Class counsel moves for an award of attorneys' fees and costs.  A district court has the authority and the duty to determine the fairness of attorneys' fees in a class action settlement, even if the parties have already agreed to an amount.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The amount of fees to be awarded rests in the court's sound discretion.  *See Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  When attorneys' fees will be paid from a common fund, "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," and "the district court must assume the role of fiduciary for the class plaintiffs*." In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).

When a settlement results in a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine attorneys' fees.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.  Using the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  *Id.*; *see also Hanlon*, 150 F.3d at 1029; *Six (6)*

*Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The Ninth Circuit has approved percentage awards in common fund cases where the class of beneficiaries is sufficiently identifiable, the benefits can be accurately traced, and the fee can be shifted with some exactitude.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Class counsel request a fee award of $237,500, or 25% of the total settlement fund. This amount is provided for in the settlement agreement.  (Settlement Agreement 1.6.) Counsel in this case are the firms KTMC as class counsel and Rosman & Germain LLP as liaison class counsel.  KTMC represents that class and liaison counsel have expended a combined 1,617.05 hours in litigating this action, resulting in a lodestar figure of $629,981.50.  (Gyandoh Decl. ¶ 85.)  Class counsel now request 38% of this amount, a mere .38 lodestar multiplier.  (*Id.*)  Given that this amount comports with the Ninth Circuit's typical benchmark for a reasonable fee award, the Court finds that class counsels' request is reasonable and approves an attorneys' fee award of $237,500.

Class counsel also seeks an award of costs in the amount of $32,571.04.  The Settlement provides that class counsel may request "reimbursement of expenses reasonably incurred in prosecuting the *Action*."  (Settlement at 10.1.)  Consistent with this provision, the law allows attorneys to "recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008).  Reasonable expenses may include items such as "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  Here, class counsel has documented the reasonableness of their out-of-pocket costs, which include meals, hotels, and transportation; photocopying; filing fees;

research; database management charges; and expert fees.  (Gyandoh Decl. ¶ 87, Exh. 10.) Class counsel's costs appear to be reasonable, and neither Defendants nor any class members oppose the request.  Accordingly, the Court approves the payment of $32,571.04 in costs to class counsel.

### e.  Service Awards

Consistent with the terms of the Settlement, Plaintiffs move for service award payments to themselves as named plaintiffs in the amount of $1,500 each.  (Settlement Agreement 10.3.)  A class action need not necessarily treat all class members equally. *Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995), *vacated and appeal dismissed*, 72 F.3d 686 (9th Cir. 1996).  "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (emphasis omitted).  However, "when a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness."  *Cohen*, 61 F.3d at 728 (quoting *Holmes v. Cont'l Can. Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983)).  The Ninth Circuit has recently cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, --- F.3d ----, No. 11-56482, 2013 WL 1831760, at * 5 (9th Cir. May 2, 2013) (holding that adequacy requirement was not met where settlement conditioned incentive awards on representatives' support for settlement).

Named Plaintiffs participated in this case by consulting with their attorneys; agreeing to represent the interests of all of the class members, reviewing drafts of the Complaint, FAC, and other litigation-related documents, and assisting in informal

discovery.  (Gyandoh Decl. Exh. 14 ["Pappas Decl."]; *Id.* Exh. 15 ["Harris Decl."].)
Both named plaintiffs undertook sufficient action on behalf of the class to justify
incentive awards, and the awards do not destroy the adequacy of the class.  Accordingly,
the Court approves payments of $1,500 to Stanley Harris and Ted Pappas.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for final approval of the class action
settlement, including awards for attorneys' fees, costs, and service awards, is
**GRANTED**.


DATED:     December 16, 2013        _____

                                          CORMAC J. CARNEY

                                          UNITED STATES DISTRICT JUDGE